IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

DEBORAH BOULAC,

    Plaintiff,

vs.   No. 19-CV-197-WPJ-JFJ

SMG, a Pennsylvania General Partnership,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court[1] upon Plaintiff Deborah Boulac's Motion to Exclude Testimony of Defendant's Purported Expert, Steven A. Adelman, filed April 19, 2024. **Doc. 98.** Defendant SMG filed a response (**Doc. 100**) to which Plaintiff Boulac replied (**Doc. 101**). Having reviewed the parties' briefing and the applicable law, the Court finds Plaintiff Boulac's motion is well-taken and therefore GRANTS the motion.

## BACKGROUND

In this premises liability action, Plaintiff Boulac seeks damages for injuries she alleges she sustained at the Bank of Oklahoma Center ("BOK Center") in Tulsa, Oklahoma. **Doc. 98 at 1.** Plaintiff Boulac, a member of the CBS Sports crew covering the NCAA Basketball Tournament at the time, tripped on a cheerleader mat in a walkway. *Id.* The issue is whether Defendant SMG breached or satisfied its duty of care owed to Plaintiff Boulac under Oklahoma law.

On February 26, 2024, Defendant SMG identified Steven A. Adelman as an expert to offer testimony about "event safety standard of care." **Doc. 87;** *see* **Doc. 100-1** (Adelman Expert

---

[1] Chief United States District Court Judge William P. Johnson of the District of New Mexico was assigned this case as a result of the Tenth Circuit Order designating Judge Johnson to hear and preside over cases in the Northern District of Oklahoma.

Report). Specifically, Defendant SMG intends to offer three opinions Adelman reached "regarding the parties in this case and the industry standards for event safety:"

> **Opinion 1:** To the extent that Deborah Boulac tripped and fell over a mat that had been used by cheerleaders warming up in the back of house production area of BOK Center, SMG met its duty of care by ensuring the mat was wholly outside the marked walkway designated for production workers such as Ms. Boulac.
>
> **Opinion 2:** Ms. Boulac failed to meet her duty to maintain reasonable situational awareness under the busy circumstances presented by the NCAA tournament.
>
> **Opinion 3:** Ms. Boulac's breach of her own duty of care was a proximate cause of her unfortunate injuries.

**Doc. 100-1 at 7.**

Plaintiff Boulac contends that Adelman should not be permitted to testify because he lacks the knowledge, skill, experience, or education to qualify as an expert; Adelman's opinions do not help the jury to understand the evidence or determine the facts in issue; and Adelman's testimony is not supported by sufficient facts or data, or the product of reliable methods. **Doc. 98.** In sum, Plaintiff Boulac contends Defendant SMG "is attempting to pass a litigation-experienced lawyer as an expert witness in a premises liability case." *Id.* at 14.

## DISCUSSION

Rule 702 of the Federal Rules of Evidence ("Rules") states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702 incorporates the principles of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), which assign to the district judge a gatekeeping role to ensure that proposed expert testimony, even non-scientific and experience-based expert testimony, is both reliable and relevant. *See Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (trial judge must determine whether the testimony has a reliable basis in the knowledge and experience of the relevant discipline).

The gatekeeping function involves a two-step analysis. First, the Court must determine whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion. *See* Fed. R. Evid. 702. Second, if the witness is so qualified, the Court must determine whether the expert's opinions are reliable under the principals set forth in *Daubert* and *Kumho Tire*. *See Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001). Trial courts have broad discretion in "both deciding how to assess an expert's reliability, including what procedures to utilize in making that assessment, as well as in making the ultimate determination of reliability." *United States v. Velarde*, 214 F.3d 1204, 1208–1209 (10th Cir. 2000) (citations omitted). It is the proponent of the expert testimony who bears "the burden of showing that its proffered expert's testimony is admissible." *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

**1.       Qualifications**

To qualify as an expert, a proposed witness must possess "such skill, experience or knowledge in that particular field as to make it appear that his opinion would rest on substantial foundation and would tend to aid the trier of fact in his search for truth." *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004) (internal quotation marks omitted). An expert who

3

"possesses knowledge as to a general field" but "lacks specific knowledge does not necessarily assist the jury." *City of Hobbs v. Hartford Fire Ins. Co.*, 162 F.3d 576, 587 (10th Cir. 1998). The Court must determine whether the expert's qualifications are both "adequate in a general, qualitative sense (*i.e.*, 'knowledge, skill, experience, training or education' as required by Rule 702) and [] specific to the matters he proposed to address as an expert." *In re Williams Securities Litigation*, 496 F. Supp. 2d 1195, 1232 (N.D. Okla. 2007). The Court has broad discretion in determining the competency of expert witnesses. *United States v. Nichols*, 169 F.3d 1255, 1265 (10th Cir. 1999).

In his February 26, 2024, Rule 26 expert report, Adelman stated his qualifications "are set forth in the attached curriculum vitae, and a list of publication appears" on his website. **Doc. 100-1, at 7.** And on May 10, 2024, Adelman provided further information and qualifications in an affidavit attached to Defendant SMG's response brief. *See* **Doc. 100-2, at ¶¶ 3–7.**[2] Based on Adelman's CV (attached to Plaintiff Boulac's motion, **Doc. 98-1**), Plaintiff Boulac's motion (**Doc. 98**), and Adelman's affidavit (**Doc. 100-2**), Adelman's qualifications are set out below.

Adelman describes himself as "an authority regarding safety at live events, particularly crowd management and event security." **Doc. 98-1 at 1.** He received a Bachelor of Arts in American Studies from Tufts University in 1985, a Master of Arts in History from the University

---

[2] The Court understands Plaintiff Boulac's argument that Adelman's affidavit, attached to Defendant SMG's response brief (**Doc. 100-2**), violates Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure since it was disclosed three months past the Court's expert report deadline. **Doc. 101 at 1–2;** *see* **Doc. 72** (expert report deadline 2/26/2024). Rule 26(a)(2)(B) commands that an expert report must contain, *inter alia*, the witness's qualifications. However, an expert report may be supplemented when required under Rule 26(e). Fed. R. Civ. P. 26(a)(2)(E). In turn, Rule 26(e)(2) states that for an "expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures . . . are due." The Court will not exclude Adelman's testimony or strike his affidavit on this ground because, when ruling from the briefs/record and not a hearing, the Court needs to have enough evidence to perform its duty in assessing the relevance and reliability of an expert's proposed testimony. *See United States v. Call*, 129 F.3d 1402, 1405 (10th Cir. 1997); *see also United States v. Nacchio*, 555 F.3d 1234, 1253–56 (10th Cir. 2009) (explaining burden is on proponent of expert to request *Daubert* hearing).

of Massachusetts in 1989, and a Juris Doctor from Boston College Law School in 1994. *Id.* at 2. Since 2010, Adelman practiced as an attorney with Adelman Law Group, PLLC, "focusing on risk and safety at live events throughout North America." *Id.* **at 1.** He is the "Vice President of [an] international trade association," Event Safety Alliance, since 2012; and is the principal author of "Crowd Management," "Event Security," "Event Safety Alliance Reopening Guide," and editor of the forthcoming "Event Safety Guide," second edition. *Id.* Adelman was also an adjunct faculty member at Arizona State University, teaching "Risk management in Venues," and an online "Sports Facilities Management" course. *Id.* Finally, Adelman has further publications in the area of event safety, has interviewed with various media outlets, and has given presentations to various event safety industry groups. *Id.* **at 2.** Regarding testimonial experience, Adelman was retained "as a standard of care expert in prominent event-related lawsuits," including the 2011 Indiana State Fair stage roof collapse, the 2017 Route 91 Harvest Festival shooting in Las Vegas, and the 2021 Astroworld festival crowd rush. **Doc. 100-2 at ¶ 4(f).**

Plaintiff Boulac contests Adelman's qualifications. **Doc. 98 at 3–6, 9–10.** She argues that Adelman's "education and work history demonstrate that he lacks the necessary experience to opine on event safety standards of care or Human Factors Engineering principles and definitions." **Doc. 98 at 3.** Identifying Adelman's prior testimony in a personal injury case on February 7, 2024, Plaintiff Boulac critiques that Adelman is not qualified as an expert here because Adelman's

> educational background consists of an undergraduate degree in American Studies, a master's degree in History and a law degree. He testified to never taking any classes on live event operations or crowd management, either during school or since graduation from law school. He admitted also not having any licenses or certifications in these, or the event safety fields. [Adelman] has never actually worked as an event operator. In his years as a litigator, he did not handle a single trip and fall type case. He readily admits to having no expertise, training, or even understanding of Human Factors Engineering principles. . . .

**Doc. 98 at 9.**

5

Defendant SMG's response to Plaintiff Boulac's qualification arguments is wanting. In response, Defendant SMG concludes that Adelman "possesses the knowledge, skill, experience, education," and "qualif[ies] as an expert" to assist the jury on "front of house" and "back of house" "standard of care requirements." **Doc. 100 at 2.** Defendant SMG assumes the qualification prong is met without addressing Plaintiff Boulac's arguments and jumps right to the necessity of Adelman's expert testimony. *Id.* Regardless, given Adelman's extensive background in event safety at live events, including many publications and being the vice-president of an international trade association ("Event Safety Alliance"), the Court concludes that Adelman is qualified in the area of event safety. The Court proceeds to the reliability and relevance analysis.

**2.       Reliability and Relevance**

Though Adelman is qualified on event safety, his testimony may be allowed only if the following requirements are met:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. At this stage, the proffered expert testimony must be both reliable *and* relevant, that is, the evidence must be helpful to the jury. *See Conroy v. Vilsack*, 707 F.3d 1163, 1168 (10th Cir. 2013) (citation omitted). And under *Kumho Tire*, a reliability finding is a prerequisite for *all* expert testimony in areas beyond the knowledge and experience of lay jurors, not just technical or scientific evidence. 526 U.S. 137, 141 (1999). In *Kumho Tire*, the Supreme Court emphasized that the *Daubert* factors[3] are not a definitive checklist or test and that a court's inquiry into reliability

---

[3] To assist in the assessment of reliability, the Supreme Court in *Daubert* listed four nonexclusive factors that the trial court may consider: (1) whether the opinion at issue is susceptible to testing and has been subjected to such testing; (2) whether the opinion has been subjected to peer review; (3) whether there is a known or potential rate of error

must be tied to the facts of a particular case. *Id.* at 150. Also, according to *Kumho Tire*, the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable. *Id.* at 152.

Adelman's testimony is neither reliable nor relevant. At the outset, and perhaps most importantly, Adelman's three opinions—Defendant SMG met its duty of care, Plaintiff Boulac failed to meet her duty, and Plaintiff Boulac breached her duty of care— are all legal conclusions. Whether Defendant SMG reasonably knew or should have known of the alleged dangerous condition, and whether it acted reasonably in mitigating and protecting against the danger, are factors in determining whether an owner is liable to an invitee under Oklahoma law.[4] These ultimate questions are for the jury to decide based on evidence presented at trial. It is not appropriate for an expert to opine on these matters. *Specht v. Jensen*, 853 F.2d 805, 809–10 (10th Cir. 1988) (holding that expert testimony is proper "if the expert does not attempt to define the legal parameters within which the jury must exercise its fact-finding function," but "when the purpose of testimony is to direct the jury's understanding of the legal standards upon which their verdict must be based, the testimony cannot be allowed"); *see, e.g., Aragon v. Lowe's Home Centers LLC*, 2023 WL 2813212, at *1–2 (D. Colo. April 6, 2023) (excluding expert testimony because the opinions were legal conclusions on whether Lowe's breached its duty regarding icy conditions on a sidewalk).

---

associated with the methodology used and whether there are standards controlling the technique's operation; and (4) whether the theory has been accepted in the scientific community. 509 U.S. at 593–94. The list is not exclusive and district courts have broad discretion to consider a variety of other factors. *Kumho Tire*, 526 U.S. at 150; *Dodge*, 328 F.2d at 1222.

[4] It is the duty of the [owner/occupant] to use ordinary care to keep [his/her/its] premises in a reasonably safe condition for the use of [his/her/its] invitees. It is the duty of the [owner/occupant] either to remove or warn the invitee of any hidden danger on the premises that the [owner/occupant] either actually knows about, or that [he/she/it] should know about in the exercise of reasonable care, or that was created by [him/her/it] [or any of [his/her/its] employees who were acting within the scope of their employment]. This duty extends to all portions of the premises to which an invitee may reasonably be expected to go. OUJI, Instruction No. 11.10, Duty to Invitee to Maintain Premises—Generally.

Next, Adelman's testimony would not help the jury understand the evidence or to determine a fact in issue. Defendant SMG and Adelman focus almost exclusively on delineating between supposed different standards of care for the "front of the house" and the "back of the house." *See* **Doc. 100 at 2, 6; Doc. 100-1, at 4–6.** But as Adelman acknowledges (and as Plaintiff Boulac points out), "[t]here is no standard of care that requires venue operators to store thick mats any particular distance away from brightly marked paths of travel in a back of house production area such as BOK Center during an NCAA tournament." **Doc. 100-1 at 4.** The Court agrees with Plaintiff Boulac that the duty placed upon Defendant SMG in this premises liability action is that of ordinary care, *see supra* n.4, and is also dependent upon the status of the Plaintiff as invitee. Therefore, expert testimony on different "front of house" and "back of house" duties of care would mislead and confuse the jury on the applicable standard of care and is not relevant.

Adelman also spends considerable time discussing "situational awareness," stating it is associated with common phrases such as "keep your head on a swivel," or if you "see something, say something." **Doc. 100-1 at 4–6.**[5] The Court agrees with Plaintiff Boulac that such testimony on situational awareness does not require specialized knowledge and would be commonly known and easily understood by the jury, thus not requiring expert testimony.

Further, Adelman's testimony is not supported by sufficient facts or data, or reliable principles and methods. Adelman's opinions are based upon the various court documents filed in this case (complaint, motion for summary judgment, discovery responses), BOK Center contracts, incident reports, depositions, and a report of findings by A. Cord Adams (Plaintiff Boulac's expert witness). **Doc. 100-1 at 7.** Plaintiff Boulac points out that Adelman's opinion "appears to be based

---

[5] Within the "situational awareness" discussion, Adelman also states he relies on "human factors engineering." However, Adelman is not qualified in the field of "human factors engineering." *See* **Doc. 98, at 5** (Plaintiff Boulac identifying Adelman's lack of human factors engineering qualification).

on a photograph taken by Defendant's counsel years after the incident that does not depict the conditions" at the time of the incident; Adelman "never inspected the area where Ms. Boulac fell," or "took [any] measurements or conducted any tests in the area;" and "ignores relevant statutes, codes, ordinances and standards that are available," as identified by Plaintiff Boulac's expert. **Doc. 98, at 11–13.** In this regard, Adelman's testimony is based on subjective belief or unsupported speculation and is thus not based on sufficient facts or data, nor reliably applied. *See Aragon v. Lowe's Home Centers LLC*, 2023 WL at *2 (expert failing to identify any codes or industry standards governing property management, thus confessing that there are no "methodologies, techniques, or approaches" for the reliability analysis); *Woods v. Ross Dress for Less, Inc.*, 2019 WL 4305742, at *3–4 (N.D. Okla. Sept. 11, 2019) (expert testimony excluded because expert looked up only some codes; reviewed a video and a statement of the incident; looked at some photographs; only visited the site once 13 months after the incident; did not talk to the plaintiff or any witnesses; and did not take measurements, or inspect the walkway); *see also Jetcraft Corp. v. Flight Safety Int'l*, 16 F.3d 362, 366 (10th Cir. 1993) (expert testimony excluded as professional speculation); *Eastridge Dev. Co. v. Halpert Assocs., Inc.*, 853 F.2d 772, 783 (10th Cir. 1988) (expert testimony excluded as "tentative and speculative").

Lastly, Defendant SMG—although correctly identifying the *Daubert* standard and the burden it carries—fails to meaningfully satisfy its burden at each step of the analysis (qualifications, reliability, and relevance). Instead, Defendant SMG focuses solely on the supposed difference between "back of house" and "front of house" standards of care. *See* **Doc. 100;** *See United States v. Nacchio*, 555 F.3d 1234, 1241, 1251 (10th Cir. 2009) (the proponent of the expert bears the burden by a preponderance of the evidence to establish that the requirements for admissibility have been met).

## CONCLUSION

Expert witnesses must be qualified, and their testimony must be both reliable and relevant. *Kumho Tire*, 526 U.S. 137, 141 (1999). Although Adelman is qualified in the area of event safety, his testimony is excluded primarily because his opinions are all legal conclusions that invade the province of the jury, *Specht v. Jensen*, 853 F.2d 805, 809–10 (10th Cir. 1988). His testimony is also excluded because his opinions would not aid the jury in understanding a fact in issue, are not based upon sufficient facts or data, are not the product of reliable principles and methods; and because Defendant SMG failed to satisfy its burden at each stage of the analysis.

**IT IS THEREFORE ORDERED** that Plaintiff Boulac's Motion to Exclude Testimony of Defendant's Purported Expert, Steven A. Adelman (**Doc. 98**), is GRANTED.

/s/
WILLIAM P. JOHNSON
UNITED STATES DISTRICT JUDGE